J-S07026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID DALTON GARNER, | |
| Appellant | No. 288 MDA 2014 |

Appeal from the Judgment of Sentence of July 11, 2012
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0000061-2011

BEFORE:  BENDER, P.J.E., OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                **FILED APRIL 07, 2015**

Appellant, David Dalton Garner, appeals from the judgment of sentence entered on July 11, 2012, as made final by the entry of an order denying post-sentence motions on August 30, 2012, following his jury trial convictions for four counts of kidnapping, two counts each of unlawful restraint, robbery, and theft by unlawful taking, and one count each of attempted aggravated assault and simple assault by physical menace.[1] Upon review, we affirm.

The facts of this case, as aptly summarized by the trial court, are as follows:

> On December 10, 2010, at approximately 6:15 p.m., Trooper Aaron Martin was called to investigate an attempted

---

[1] 18 Pa.C.S.A. §§ 2901, 2902, 3701, 3921, 901, and 2701, respectively.

homicide and robbery in St. Thomas Township, Franklin County, Pennsylvania. Trooper Martin proceeded to the emergency room of Chambersburg Hospital, where he met with the victims[,] Micah Eugene McGowan and Mary Eireen McGowan. He observed ligature marks on Micah's neck, a stab wound on the left side of his head, and a laceration on the back of his head, along with swelling and bruising on his face.

The incident occurred earlier that day. [Appellant] had just been released on parole earlier that morning. Micah stated that [Appellant] had knocked on his front door at 2:30 p.m. [Appellant's] girlfriend, Heather Elaine Johnson drove him there and dropped him off. [Appellant] was an old friend who Micah had not seen in almost nine months. Micah invited [Appellant] inside and offered him a glass of water, after which they proceeded to Micah's room. They watched television and Micah went to his desk to work. At that point, [Appellant] struck Micah in the back of his head with a bathroom scale. Micah then fled downstairs but was chased by [Appellant].

[Appellant] brought Micah back upstairs to his room and proceeded to stab Micah on the side of the head with a knife he brought. Micah was lying face down on the floor and [Appellant] had his hands tied behind his back. [Appellant] then put a plastic bag over Micah's head. Micah was unable to breathe and bit a []hole in the bag. [Appellant] then slipped a tie from a bathrobe around Micah's neck, beginning to strangle him. [Appellant] had his knees on Micah's back as he pulled the bathrobe tie, asking where Micah's valuables were. Micah told [Appellant] the location of his keys and wallet, at which time [Appellant] took Micah to the living room downstairs. It was at this point that Micah's mother, Mary McGowan, came home.

Mary arrived home at approximately 4:00 p.m. She had been visiting her husband at Hershey Medical Center. As Mary came through the back door, she heard Micah yell "Mom, run!" [Appellant] then ran at her with a knife, telling her to shut up or he would hurt her. [Appellant] had Mary get on the floor in the kitchen face down. Mary asked [Appellant] what he was doing, to which he replied that he owed some people money. Mary indicated that she had

money in her purse. [Appellant] removed $500[.00] cash and credit cards from her wallet and her purse. Mary asked if [Appellant] was going to kill her and her son, to which [Appellant] replied in the negative but he would not allow her to check on Micah. Then [Appellant] tied Mary's hands behind her back. Because Mary's shoulder hurt, he then tied her hands in the front and had her sit down in front of the [refrigerator]. [Appellant] also asked if there were any guns in the house. Mary indicated that they had "long guns," but lied and said they had no pistols. [Appellant] did not take any guns.

[Appellant] told Mary to tell the police that they had been robbed by black men. [Appellant] told her that he owed $50,000.00 to some "bad men," and if the police got involved the men would harm him and her family. It was at that point that Mary asked again to help her son, Micah. She told [Appellant] that he needed to go to a hospital. [Appellant] indicated that he would take him to McConnellsburg, but Mary stated he should go to Chambersburg. [Appellant] untied Mary and allowed her to pull the car around the back of the house. He then untied Micah and helped Mary get him into the car. [Appellant] got into another car owned by Mary and followed her as she left with Micah [to] drive him to Chambersburg Hospital. [Appellant] was arrested and charged[, *inter alia*,] with the above listed offenses.

Trial Court Opinion, 4/24/2014, at 4-5.

On May 10, 2012, a jury convicted Appellant of the aforementioned crimes. On July 11, 2012, the trial court sentenced Appellant to an aggregate term of incarceration of 37½ to 84 years of incarceration. Appellant filed a post-sentence motion on July 23, 2012, seeking reconsideration of his sentence. By order entered on August 30, 2012, the trial court denied relief. Appellant did not appeal. On January, 16, 2014, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc*, after Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act

(PCRA), 42 Pa.C.S.A. §§ 9541-9546, and appointed counsel filed an amended PCRA petition. This timely appeal followed.[2]

On appeal, Appellant presents one issue for our review:

> Whether the trial court erred as a matter of law by refusing to merge four convictions of kidnapping into two sentences when there were only two victims and all of the convictions arise from a single criminal act?

Appellant's Brief at 4.

Appellant argues that the trial court erred as a matter of law by not merging his four kidnapping convictions into two sentences, one sentence for each victim. *Id.* at 7-9. More specifically, in sum, Appellant contends:

> [Appellant] was convicted of kidnapping both victims under 42 Pa.C.S. § 2901(a)(2) and § 2901(a)(3). Kidnapping, under 18 Pa.C.S. § 2901, requires a person to 'unlawfully remove[] another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intent: […] (2) to facilitate commission of any felony or flight thereafter; (3) to inflict bodily injury on or terrorize the victim or another.'
>
> While [Appellant] may have had differing intentions from kidnapping the victims, it is clear that there was only one occurrence of kidnapping of each respective victim. There were not separate incidences of kidnapping for differing purposes, but one incident of kidnapping each victim while

---

[2] Appellant filed a notice of appeal on February 12, 2014. The same day, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 24, 2014.

there may have been different purposes for perpetrating the kidnapping. While it is clear that the jury found [Appellant] had the intent to confine the McGowans for the purposes of facilitating the commission of a felony, and to inflict bodily injury or terrorize, it was one crime committed against each respective victim.

This is a case of alternative theories of criminal culpability, for the same crime, in which the jury found [Appellant] to be guilty of both states of mind, but it was clearly only one volitional act. Essentially, the crime of kidnapping has two elements, 1) the act of unlawfully confining or moving the victim, and 2) intent to do so for one of four delineated unlawful purposes. Following the logic of the trial court's interpretation of [42 Pa.C.S.A.] § 9765, [Appellant's] actions are the equivalent as if he would have kidnapped the McGowan[s] for one purpose, left the residence, then returned at a different time and kidnapped them again for another purpose delineated under § 2901. That is clearly not what occurred in this case, and it would be inherently unfair to punish [Appellant] as if it were the case.

For that reason, the separate convictions under § 2901(2) and (3) should have been merged for each respective victim, as they were differing theories of intent for the same volitional act, and thus constituted only one crime, not two distinct criminal actions arising out of separate sets [of] factual circumstances.

*Id.* at 8-9.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Nero**, 58 A.3d 802, 806 (Pa. Super. 2012) (citation omitted). "An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." **Id.** (citation omitted).

- 5 -

Merger of sentences is governed by 42 Pa.C.S.A. § 9765, which provides:

**§ 9765. Merger of sentences**

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

Our Supreme Court determined that

the plain language of Section 9765 reveals a legislative intent to preclude the courts of this Commonwealth from merging sentences for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other. Our Supreme Court held that when each offense contains an element the other does not, merger is inappropriate.

**Nero**, 58 A.3d at 806 (citations, quotations, and brackets omitted).

The jury convicted Appellant of two kidnapping charges with respect to each victim. The legislature has defined those two crimes as follows:

[A] person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

\* \* \*

(2) To facilitate commission of any felony or flight thereafter.

(3) To inflict bodily injury on or to terrorize the victim or
another.

\*    \*    \*

18 Pa.C.S.A. § 2901(a)(2) and (3).

Initially, we note that, to the extent that Appellant argues he committed "one crime […] against each respective victim[,]" the jury found otherwise. We also note that Appellant did not raise a challenge to the sufficiency of the evidence in his Pa.R.A.P. 1925(b) concise statement. Hence, Appellant has waived any challenge to the sufficiency of the evidence introduced in support of his four kidnapping convictions. **See Commonwealth v. Berry**, 877 A.2d 479, 485 (Pa. Super. 2005) (holding issues which are not raised in a concise statement of matters complained of on appeal under Pa.R.A.P. 1925 are waived on appeal).

Regarding the merger of sentences, in this case, there is no dispute that the crimes arose from a single criminal act. However, upon review of Subsections (a)(2) and (a)(3) of the kidnapping statute, each offense contains an element the other does not. The criminal intent for kidnapping under Subsection (a)(2) is to "facilitate a felony or flight thereafter." Whereas, the criminal intent for kidnapping under Subsection (a)(3) is to "inflict bodily harm or to terrorize the victim." Both Subsections have a statutory element that the other does not. Moreover, this Court has previously refused to merge sentences for two crimes defined under two different sections of the aggravated assault statute. **See Commonwealth**

*v. Rhoades*, 8 A.3d 912, 918 (Pa. Super. 2010).    Hence, we discern no error of law in denying Appellant relief on his merger claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2015